**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CIVIL ACTION NUMBER**

**DERRICK JACOBS,**
*PLAINTIFF*

**V.**

**CITY OF PHILADELPHIA, et al**
*DEFENDANTS*

**FEDERAL CIVIL RIGHTS COMPLAINT**

Plaintiff, former Philadelphia Police Detective Derrick Jacobs ("Jacobs"), brings this action against former Philadelphia Police Commissioner Danielle Outlaw ("Outlaw"), former Deputy Philadelphia Police Commissioner Robin Wimberly, former Deputy Philadelphia Police Commissioner Dennis Wilson, former Deputy Philadelphia Police Commissioner Benjamin Naish, Deputy Philadelphia Police Commissioner Frank Vanore, Philadelphia Police Captain Charles Vogt, Philadelphia Police Lieutenant Craig Morton, Philadelphia Police Sergeant Zachary Koenig, Philadelphia District Attorney Lawrence Krasner, former Assistant District Attorney Patricia Cummings, former Assistant District Attorney Tracy Tripp, former Philadelphia City Solicitor Diana Cortes, Deputy Chief City Solicitor Nicole Morris, Deputy City Solicitor Kia Ghee, and the City of Philadelphia ("City") for unlawfully retaliating against him for filing a Federal Civil Rights Complaint and a Philadelphia Weekly magazine article on Wednesday, April 21, 2021 alleging corruption at the Philadelphia District Attorney's Office "DAO." The defendants violated the plaintiff's First Amendment, Fourth Amendment, and Fourteenth Amendment rights.

## I.  JURISDICTION AND VENUE

1. This action is brought under 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. 1988. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## II.   PARTIES

2. Plaintiff former Philadelphia Police Detective Derrick Jacobs was employed by the City of Philadelphia Police Department for over twenty-five years until his constructive discharge. Prior to his separation Jacobs was a highly decorated law enforcement officer.

3. Defendant Philadelphia Police Commissioner Danielle Outlaw ("Outlaw") at all times relevant and material herein was employed as the Police Commissioner of the City of Philadelphia.

4. Defendant Deputy Philadelphia Police Commissioner Robin Wimberly ("Wimberly") at all times relevant and material herein was employed as the Deputy Police Commissioner of Professional Standards of the Philadelphia Police Department ("PPD").

5. Defendant Deputy Philadelphia Police Commissioner Dennis Wilson ("Wilson") at all times relevant and material was employed as a Deputy Police Commissioner and Chief Inspector for the City of Philadelphia.

6. Defendant Deputy Philadelphia Police Commissioner Benjamin Naish ("Naish") at all times relevant and material herein was employed as the Deputy Police Commissioner and Inspector for the City of Philadelphia.

7. Defendant Deputy Philadelphia Police Commissioner Frank Vanore ("Vanore") at all times relevant and material was employed as a Deputy Police Commissioner and Chief Inspector for the City of Philadelphia

8. Defendant Philadelphia Police Captain Charles Vogt ("Vogt") at all times relevant and material was employed as a Police Captain of the Internal Affairs Division Criminal Section of the PPD currently named Investigative Support Services ("ISS").

9. Defendant Philadelphia Police Lieutenant Craig Morton ("Morton") at all times relevant and material was employed as a Police Lieutenant of the Internal Affairs Division Criminal Section of the PPD currently named Investigative Support Services ("ISS").

10. Defendant Philadelphia Police Sergeant Zachary Koenig ("Koenig") at all times relevant and material was employed as a Police Sergeant of the Internal Affairs Division Criminal Section of the PPD currently named Investigative Support Services ("ISS").

11. Defendant Philadelphia District Attorney Lawrence Krasner ("Krasner") at all times relevant and material was employed as the Philadelphia District Attorney.

12. Defendant Assistant District Attorney Patricia Cummings ("Cummings") at all times relevant and material was the supervisor of the Philadelphia District Attorney's Office Special Investigations Unit/Conviction Integrity Unit.

13. Defendant Assistant District Attorney Tracy Tripp ("Tripp") at all times relevant and material was an employee/supervisor of the Philadelphia District Attorney's Office Special Investigations Unit/Conviction Integrity Unit.

14. Defendant Philadelphia City Solicitor Diana Cortes ("Cortes") at all times relevant and material was the Philadelphia City Solicitor for the City of Philadelphia.

15. Defendant Deputy Chief City Solicitor Nicole Morris ("Morris") at all times relevant and material was the Deputy Chief City Solicitor for the City of Philadelphia.

16. Defendant Deputy City Solicitor Kia Ghee ("Ghee") at all times relevant and material was the Deputy City Solicitor for the City of Philadelphia.

17. Defendant City of Philadelphia ("The City") is a Pennsylvania municipal corporation and is the legal entity responsible for itself, the Philadelphia Police Department, Office of the District Attorney, and City Solicitor's Office for the City of Philadelphia. The City is also responsible for the unidentified Philadelphia police personnel and employees, who assisted, abetted an acted in concert in violating Plaintiff's Constitutional Rights as described in this complaint. This Defendant is a proper entity to be sued under 42 U.S.C. § 1983.

18. The Defendants are being sued in their official and individual capacities.

3

### III.   FACTS

19. On April 21, 2021 A. Benjamin Mannes ("Mannes") authored an article for Philadelphia Weekly magazine. The article was titled: **COMPLAINT ALLEGES A PATTERN OF MISCONDUCT AT D.A.'S OFFICE.**

20. The article addressed Jacobs' corruption allegations in his federal civil complaint filings.

21. On July 14, 2023, Jacobs learned the Philadelphia Police Department's Internal Affairs Criminal Division ("ISS") surreptitiously initiated a criminal investigation against Jacobs to illegally obtain search warrants for Jacobs' electronic communications (cell phone, text, and email data) as a result of the A. Benjamin Mannes Philadelphia Weekly article on April 21, 2021.

22. Mannes article indicated the Philadelphia District Attorney's Office was releasing convicted murderers without investigation and illegally arresting law enforcement officers with the assistance of the PPD.

23. Mannes article acknowledged the falsification of illegal warrants and affidavits to achieve the criminal agenda of the DAO with the assistance of the PPD.

24. On September 15, 2022, Jacobs filed an official police misconduct complaint form online against Lieutenant Jason Hendershot alleging he was "altering/preparing affidavits and warrants to illegally indict or place officers under investigation" at the request of the Philadelphia District Attorney's Office (Complaint Number W-IAD-22-1551). In violation of Philadelphia Police Department policy, Jacobs never received a response to this complaint.

25. On July 11, 2023, Jacobs filed a second official police misconduct complaint online against Lieutenant Jason Hendershot for his conspiracy with Assistant District Attorney Vincent Corrigan in the falsification of an affidavit and warrant to remove the aggressive actions of defendant Walter Wallace in an Officer Involved Shooting ("OIS") that killed Wallace. The online complaint was assigned Complaint Number W-IAD-23-2482. Krasner wanted Wallace's aggressive actions removed to bring criminal charges against the Officers involved. Wallace's family was represented by Krasner

Shaka Johnson. The City paid the family millions in a civil lawsuit. The event was captured on video. *Note: The Officers have not been criminally cleared by Krasner. One Officer has since been killed.*

**26. Falsification of warrants and affidavits are criminal offenses.**

27. The City also erupted in riots as a result that caused a person stopped by police during the riots to also be paid millions. The Officers were subsequently cleared of misconduct.

28. On July 12, 2023, Corporal Sanchez #8155, assigned to the PPD Internal Affairs Division ("IAD") Intake Unit emailed Jacobs and confirmed receipt of Jacobs' complaint. Corporal Sanchez stated "A review shows that your complaint is already being investigated by our offices under IAD #21-1521. Therefore, your email will be forwarded to the assigned investigator of same." *Note: Upon information and belief Sanchez, who was recently transferred to IAD, inadvertently provided Jacobs with the illegal criminal investigation against Jacobs.*

29. On July 12, 2023, Jacobs realizing he did not file a complaint in 2021, immediately contacted Corporal Sanchez ("Sanchez") for clarification. Jacobs informed Sanchez he did not file a complaint in 2021. Sanchez informed Jacobs he was recently assigned to IAD and the complaint was being handled by Internal Affairs Criminal Division Investigative Support Services ("ISS"). The complaint was being handled by Captain Vogt's team and Lieutenant Craig Morton ("Morton"). Sanchez informed Jacobs Morton was on vacation.

30. On July 13, 2023, Jacobs attempted to contact Vogt and Morton without success.

31. On July 14, 2023, at approximately 9:18am, Jacobs contacted Lieutenant Craig Morton of ISS. Jacobs asked Morton about the 2021 complaint. Morton informed Jacobs the internal criminal complaint was initiated against Jacobs as a result of A. Benjamin Mannes' article in Philadelphia Weekly magazine on April 21, 2021. Morton informed Jacobs the complaint came from the "Third Floor" (The PPD Commissioners and Command Staff). Jacobs asked when was the criminal investigation initiated and Morton responded on the same date as the article, April 21, 2021. Jacobs asked Morton who initiated

the complaint and Morton would not respond. Morton asked Jacobs about his ongoing Federal Civil Rights complaint (19-cv-4616). Jacobs acknowledged the complaint was still ongoing. Jacobs' asked Morton for a copy of the complaint and Morton indicated he would not provide Jacobs a copy.

32. On July 14, 2023, Jacobs issued a subpoena to Lieutenant Craig Morton for a deposition by email relating to the illegal criminal investigation against Jacobs under Federal Civil Complaint Number 19-cv-4616.

33. On July 14, 2023 at 5:33pm, Morton blocked emails from Jacobs.

34. On July 14, 2023 at 5:37pm, Jacobs forwarded the subpoena to Morton's supervisor, Captain Charles Vogt.

35. On July 25, 2023, Captain Vogt informed Jacobs Morton would be on scheduled summer vacation from July 28, 2023 through August 14, 2023.

36. On October 4, 2019, Jacobs filed two federal civil rights lawsuits against the City of Philadelphia, et al. The first lawsuit was for FLSA violations (19-cv-4615). The second for First Amendment Retaliation violations (19-cv-4616).

37. Also, on October 4, 2019, Jacobs asked then Philadelphia Police Commissioner Christine Coulter for "Whistleblower" protections. Coulter testified in a deposition in 2022 she received information (incorrect information) from then Philadelphia City Solicitor Marcel Pratt that Jacobs could not receive protection from Krasner.

38. Coulter immediately relayed this information to then Deputy Philadelphia Police Commissioner Dennis Wilson and due to the urgency ordered him to relay the information to Jacobs.

39. Wilson lied to Coulter and informed her he immediately spoke with Jacobs and relayed the information to Jacobs.

40. After Wilson lied to Coulter, Wilson, Vanore, and Hendershot violated departmental policy and retaliated against Jacobs by intercepting all future communications from Jacobs to Coulter and

new Philadelphia Police Commissioner Danielle Outlaw outlining the retaliatory actions of the defendants.

41. In April 2022, Jacobs deposed Wilson regarding the FLSA claims.

42. After the 2022, deposition of Wilson, Jacobs learned in August 2018 there was a meeting at the DAO with Jacobs' superiors, Patricia Cummings, and Tracy Tripp. During the meeting Cummings and Tripp informed Jacobs' superiors they wanted Jacobs and his partner removed and transferred from the Officer Involved Shooting Investigation Unit because of their race.

43. Jacobs' superiors (Inspector James Smith) immediately and publicly confronted and excoriated Hendershot after learning he was acting in concert committing illegal actions with the DAO without their knowledge.

44. Jacobs' superiors also immediately informed then Deputy Police Commissioner Dennis Wilson of Cummings and Tripp's racially charged comments and requests.

45. Wilson later transferred Jacobs' superiors including Inspector James Smith as a result and replaced them with Vanore and Naish at the request of Krasner.

46. During a deposition in 2023, Hendershot testified that between September 2019 and November 2019, he informed Vanore, Wilson, and members of the City Solicitors' Office (on orders from Wilson) that Tracy Tripp was committing illegal and criminal actions against Jacobs and the grand jury leak story was a retaliatory fabrication.

47. In 2019, then Philadelphia City Solicitor Diana Cortes held meetings with Tripp, Cummings, and Nicole Morris after receiving information from Hendershot Tripp and the DAO was committing criminal acts against Jacobs.

48. In May 2023, Jacobs learned that Vanore intentionally and recklessly ordered Hedershot on fabricate official police department reports to commit a fraud against the District Court and retaliate against Jacobs.

49. Vanore also threatened any member of the PPD who provided Jacobs with information regarding corruption.

50. After receiving the altered, fabricated and doctored official police departmental documents ordered by Vanore, Jacobs immediately contacted Nicole Morris and a telephone conference was scheduled for May 25, 2023 at 11am.

51. On May 25, 2023, Jacobs phoned Nicole Morris at 11am.

**May 25, 2023 Telephone Conference between Derrick Jacobs and Nicole Morris after Jacobs received fabricated official documents.**

52. Jacobs began the conversation by indicating to Nicole Morris it may be in the defendants best interest to settle the FLSA claim (19-cv-4615) through a non trial disposition.

53. Morris responded by asking Jacobs his thoughts. Jacobs responded with three possible scenarios. (1) Jacobs be made whole (2) Jacobs hires an economic expert to provide settlement parameters (3) Trial.

54. Morris responded to Jacobs being made whole first and asked Jacobs about his position the documents were fabricated.

55. Jacobs informed Morris the reason he offered the olive branch to the defendants after viewing the documents was because not only do the documents confirm his claims, but they also may upset Judge Slomsky with the defendants attempting to defraud the Court.

56. Jacobs then informed Morris that after he requested the documents Vanore contacted Hendershot and told him to have the code changed on the documents and threatened repercussions to anyone providing Jacobs with information in the future.

57. Morris then asked Jacobs to point out and explain the fabrications. Jacobs explained the codes and pointed out the fabrications in the official City of Philadelphia documents to Morris.

58. Morris then asked Jacobs if he called Lieutenant Hendershot to testify would he say that Deputy Police Commissioner Vanore called him and ordered him to change the code.

59. Jacobs informed Morris yes, and actually it was confirmed during a retirement party at the FOP (Fraternal Order of Police) that Vanore

ordered Hendershot to make the illegal changes and the changes were made.

60. Morris then asked Jacobs whose retirement was it. Jacobs informed Morris it was his former partner's retirement.

61. Morris then attempted to justify the fabrications and Jacobs confirmed the fabrications were not justified and pointed them out to Morris.

62. Morris then addressed option number one (being made whole) by indicating Jacobs demands for millions probably would not be entertained and **"reinstatement is not an option."**

63. Morris then stated it's not going to be "seven figures" and reiterated it's not going to include reinstatement.

64. Jacobs then asked Morris why is **"reinstatement not an option"** and indicated to Morris he was a victim of retaliation and has not committed any crimes or violated any departmental policy. Jacobs indicated to Morris the parties know he was a good investigator so it could have nothing to do with his investigative acumen.

65. Morris responded "it's not something the department is willing to do."

**MORRIS STATED REINSTATEMENT IS NOT SOMETHING "THE DEPARTMENT IS WILLING TO DO."**

A. Who from "the department" told Morris reinstatement is not an option?

　　1. Then Philadelphia Police Commissioner Coulter indicated to Jacobs his whistleblower allegations were extremely serious. Coulter also testified she was not informed of the retaliatory discipline that had taken place against Jacobs and she should have been notified and informed. Finally, Coulter testified she has never known Jacobs to violate department policy or disparaged the PPD.

　　2. Deputy Philadelphia Police Commissioner Dennis Wilson was demoted to Chief Inspector after being threatened by Krasner with arrest and termination by Outlaw if he did not lie to millions of citizens around the world. A lie that caused the

illegal arrest of Philadelphia Police Officer Richard Nicolletti. The lie also caused the taxpaying citizens of Philadelphia millions of dollars. Wilson would later recant this lie during deposition testimony.

3. Philadelphia Police Commissioner Danielle Outlaw informed Jacobs in email communications she had zero knowledge of Jacobs' disciplinary charges or federal civil rights complaint.

4. Finally, then Philadelphia City Solicitor Marcel Pratt informed then Philadelphia Police Commissioner Christine Coulter that Jacobs could not be provided Whistleblower protections because the DAO was not the PPD. *Note: This is/was an incorrect interpretation of the PA Whistleblower Law. At this time Jacobs is investigating whether the incorrect interpretation was intentional.*

5. So, who in "the department" made the comment to Morris? Morris had already been informed by Hendershot of the illegal activity against Jacobs. Morris also had knowledge of Jacobs' request for Whistleblower protections.

   a. It was not Police Commissioner Christine Coulter.

   b. It was not Police Commissioner Danielle Outlaw.

66. Lawrence Krasner is who. Krasner and the City Solicitor have been holding high level "off the books" meetings to discriminate and retaliate against police officers. The meetings continue to this very day.

67. Recently, former Police Inspector Joseph Bologna was vindicated from an illegal arrest and prosecution by Krasner and the DAO. An incensed Krasner publicly stated inflammatory lies against Bologna during a press conference after Bologna was granted reinstatement to the PPD.

68. Philadelphia Police Commissioner Kevin Bethel wanted to immediately reinstate Bologna. Krasner and the City of Philadelphia Law Department (Morris, Diaz...etc.) have acted in concert and blocked Bologna's reinstatement to the PPD in a discriminatory and

retaliatory fashion. The Law Department stated the PPD does not have the authority to immediately reinstate Bologna.

69. This is a pattern and practice between the City of Philadelphia's City Solicitor's Office and the DAO under Krasner to pillage and defraud the citizens of Philadelphia of millions of dollars.

70. Hendershot testified that between "September and November of 2019" he informed Deputy Police Commissioner Dennis Wilson, City Solicitor Kia Ghee, Chief Inspector Frank Vanore, and others that Tracy Tripp was committing illegal actions against Jacobs.

71. Hendershot also testified that prior to the filings of Jacobs lawsuits, he and Jacobs discussed the impending retaliation that was going to be "inflicted" upon Jacobs by District Attorney Larry Krasner.

72. Hendershot testified he "learned" of Kia Ghee through Deputy Commissioner Wilson after Jacobs filed his lawsuits.

73. Wilson wanted Hendershot to keep Krasner "up to speed" regarding Jacobs, through City Solicitor Kia Ghee.

74. After Hendershot informed Kia Ghee of Tripp's criminal actions against Jacobs on December 6, 2019, City Solicitor Diana Cortes scheduled a "meeting" at the **DAO** with Nicole Morris, Kia Ghee, Tracy Tripp, and Catherine Kiefer to discuss their next plan of attack against Jacobs.

75. On January 21, 2020, the members of the meeting participated in a illegal, discriminatory, and racially orchestrated disciplinary process in violation of Jacobs' Constitutional Rights (*Note: The meeting consisted of all lawyers who should have been aware of the Constitution prior to their participation. Jacobs intends to notify the proper authorities and agencies of their conduct. Conduct which is subject to the crime/fraud exception*).

76. The defendants' nefarious actions against Jacobs are obvious. After Philadelphia Police Commissioner Christine Coulter inquired about "Whistleblower" protections from these same lawyers (Marcel Pratt) for Jacobs; the lawyers participated in a coup d'état against Coulter as the Philadelphia Police Commissioner and leader of the PPD. Wilson, Vanore, and Hendershot intercepted all communications to Coulter

from Jacobs, in violation of departmental policy. Meanwhile, Cortes, was holding "meetings" at the DAO (*Note: Why not the City Solicitor's Office?*) regarding Jacobs without informing Coulter, who was Jacobs' ultimate superior at the time. At the same time Wilson "dispatched" Hendershot to keep the conspirators "up to speed" regarding Jacobs, also without notifying his superior, Coulter.

## The Corruption Cover-up and conspiracy by City Solicitor Diana Cortes and District Attorney Lawrence Krasner.

77. In 2020, Jacobs was contacted by the City Solicitor's Office regarding former Police Officer Eric Ruch.

78. Jacobs was informed the defendant (Tyler Nichols) was seeking Five million dollars in damages as a result of him committing aggravated assault with a firearm against three police officers. Nichols' firearm malfunctioned. Jacobs was the assigned investigator.

79. Jacobs learned Tyler Nichols had lied in an effort to collect the funds.

80. What Jacobs did not know at the time (2020) was Tyler Nichols had entered a guilty plea on November 9, 2018 and was given a "sweetheart" deal by Krasner's DAO of 11-1/2 to 23 months and credit for time served and immediately released from prison. *Note: Krasner's DAO never contacted Jacobs regarding "his" case. The irony here is that, while Krasner was releasing/unleashing Tyler Nichols back upon the citizens of Philadelphia on November 9, 2018 he was threatening Jacobs with criminal prosecution for exposing their corruption on November 9, 2018.*

81. On December 15, 2022, Tyler Nichols reached a civil settlement agreement with the City of Philadelphia for a federal civil rights complaint filed on February 13, 2019 involving an incident in which he was a convicted felon who committed aggravated assault against three Philadelphia Police Officers with a stolen firearm (19-cv-617).

82. This is not the only case where the City of Philadelphia Solicitor's Office has paid monies to a known convict after receiving a sweetheart deal or exoneration from the DAO that was not based upon the evidence and/or fact.

83. The City of Philadelphia knows this fact to be true and commissioned a report because of Krasner's "exonerations" without evidentiary support.

84. On September 15, 2022, the head of Krasner's Conviction Integrity Unit ("CIU"), Michael Garmisa ("Garmisa") participated in a deposition.

85. During the deposition Garmisa confirmed the DAO unleashed a convicted murderer on the citizens of Philadelphia with one of Krasner's CIU fabricated "exonerations" without "investigation."

86. The City then paid the convicted murderer over two million taxpayer dollars.

87. On September 18, 2022, Chief Deputy City Solicitor Danielle Walsh, who attended Garmisa's deposition, received a report she commissioned from an independent risk management/investigative firm.

88. The report confirmed that the DAO had unleashed the convicted murderer without any evidence to support the release.

89. Armed with this information the City of Philadelphia Solicitor's Office had a fiduciary responsibility to conduct investigations (criminal) into the actions of Krasner's DAO that unleashed tens of convicted murderers at a cost of close to One Hundred million taxpayer dollars.

90. The City has turned a blind eye at the expense of the public.

91. The defendants' retaliation of Jacobs was due to Jacobs' intent of exposing this corruption, which clearly is a matter of public concern.

92. Diana Cortes as the head of the City Solicitor's Office hid this report for over two years. Opened the coffers to convicted murderers and held meetings to chill the speech of Jacobs with members of the DAO and PPD from exposing this criminality.

**<u>Krasner's DAO and illegal arrests of sworn Law Enforcement Officers acting in concert with the Internal Affairs Division</u>**

**("IAD") of the PPD inflicting retaliatory and illegal disciplinary procedures.**

**Police Officer Ryan Pownall**

93. On June 8, 2017, Police Officer Ryan Pownall was involved in an OIS with defendant, David Jones. During the OIS Pownall shot Jones, killing him.

94. At the time of the OIS Pownall was transporting eyewitness Terrance Freeman to the Special Victims Unit. Terrance Freeman provided an eyewitness account of the incident to Jacobs on June 8, 2017.

95. On or before June 20, 2017 at 9:19am, Krasner provided members of Black Lives Matter ("BLM") with eyewitness Terrance Freeman's contact information.

96. As a result of the information provided in an ongoing investigation by Krasner, Christopher Norris of BLM contacted Jacobs pretending to be a witness.

97. On September 1, 2018, Asa Khalif of BLM "tweeted" about Pownall's arrest prior to the grand jury presentment on September 4, 2018. Upon information and belief Krasner provided Khalif with the grand jury information in violation of his oath of office.

98. On October 17, 2022, The Honorable Judge Barbara McDermott dismissed all charges against Pownall after concluding Tracy Tripp misrepresented facts to the grand jury and to the Court to prosecute Pownall at all cost.

99. Pownall was subsequently reinstated as a member of the Philadelphia Police Department.

**Police Officer Jason Reid**

100.    On January 13, 2018, Philadelphia Police Officers Stephan and Mooney conducted a vehicle investigation in the area of 2865 Kensington Avenue.

101.    Officer Stephan approached the passenger of the vehicle, later identified as Stefon Crawley ("Crawley").

14

102.    A struggle began in earnest for a stolen firearm with an extended magazine in Crawley's waistband. The Officers requested an "Assist Officer."

103.    During the struggle Crawley attempted to steal Officer Stephan's firearm and kill him, while yelling "you're gonna have to fucking kill me" multiple times. *Note: Crawley's DNA was recovered from Officer Stephan's firearm.*

104.    During the struggle a gunshot was heard by responding Officer, Jason Reid.

105.    Immediately after the gunshot was heard Officer Reid observed Crawley fleeing the vehicle on foot and discharged his firearm, striking Crawley.

106.    Crawley was transported to a nearby hospital for treatment.

107.    Crawley who was initially represented by the Public Defender's Office obtained legal representation from District Attorney Lawrence Krasner's law partner James Funt.

108.    Krasner's SIU intentionally did not clear the victims (Officers Reid and Stephan) to testify.

109.    Krasner then withdrew all charges against Crawley who attempted to kill multiple police officers.

110.    Krasner's DAO arrested Officer Jason Reid.

111.    Officer Reid was exonerated of the charges inflicted upon him by Krasner's DAO.

112.    Krasner's DAO held criminal charges over Officer Stephan and Reid's head for 3-1/2 years until it was a financial benefit to Crawley and Krasner's law partner.

113.    Krasner's law partner and Crawley then received almost a quarter of a million dollars for attempting to kill police officers.

114.    On December 11, 2019, Krasner's DAO SIU conspired with Samatha Melamed of the Philadelphia Inquirer to author a cop smearing and false account of OIS involving Crawley.

115.    On December 11, 2019, prior to Melamed's article Brian Collins contacted OISI and wanted information from anyone but Jacobs to provide to Melamed.

**Inspector James Smith and Detective Patrick Smith**

116.    In August of 2018, Inspector James Smith ("Inspector Smith") was Jacobs' superior.

117.    In August of 2018, Inspector Smith was at a conference with Patricia Cummings and Tracy Tripp regarding the Pownall OIS.

118.    During the conference Tripp and Cummings informed Inspector Smith they wanted Detective Sierra and Detective Jacobs removed from OISI because of the race. This was after Inspector Smith informed Tripp and Cummings Sierra and Jacobs were his two best detectives.

119.    Inspector Smith then informed his superior Deputy Police Commissioner Dennis Wilson of Tripp and Cummings comments regarding Jacobs and Sierra.

120.    Wilson would later transfer Inspector Smith. *Note: During a deposition of Wilson he would once again display a pattern and practice of "plausible deniability" by claiming ultimately the decision rested with former Philadelphia Police Commissioner Richard Ross.*

121.    After the "George Floyd" riots of 2020 Wilson was forced to lie to millions of people by former Police Commissioner Danielle Outlaw and former Mayor James Kenney regarding the law enforcement response to coordinated rioters on Interstate Highway 676. *Note: During a deposition Wilson would testify to being forced to lie because "the heat got too hot" for the City leaders.*

122.    After his blatant deception to the citizens of the United States, Wilson was demoted to Chief Inspector in July of 2020. The new assignment oversaw police radio communications.

123.    In August of 2020, Inspector James Smith and his brother Patrick Smith observed a suspicious male attempting to gain access to vehicles in the area.

124.    Inspector Smith followed police procedures and contacted 911 and identified himself.

125.    Krasner, the male and his family concocted a story of Inspector Smith being "town watch."

126.    Wilson, knowing Krasner's previous disdain for Inspector Smith regarding the Jacobs' matter listened to the police radio transmission.

127.    Wilson realized that Krasner was lying with the town watch fabrication and the progression of the incident.

128.    Captain Vogt's team investigated the incident for IAD.

129.    Sergeant Zachary Koenig realizing the fabrications wanted to prepare an arrest affidavit and warrant for the male.

130.    Krasner's DAO ordered arrest warrants be prepared for Inspector Smith and his brother Detective Patrick Smith.

131.    Wilson realizing the documents and warrants were fabrications the entire time allowed these retaliatory actions to proceed against the Smiths.

132.    On April 1, 2021, Krasner's DAO arrested Inspector Smith and his brother Detective Patrick Smith.

133.    The charges have since been dropped and the brothers vindicated. *Note: Krasner and his continued pursuit of the persecution of law enforcement officers have continued to appeal these frivolous charges up to the Pennsylvania Supreme Court.*

134.    All parties involved in the incident which led to the illegal arrests have since recanted and/or altered their account of the incident provided by Krasner.

135.    Inspector Smith was arrested for one reason and one reason only. RETALIATION. Inspector Smith was one of if not the most respected Commander in the Philadelphia Police Department. Inspector Smith's integrity has NEVER been questioned. Wilson knows/knew this. Krasner knows/knew this.

136.     Detective Patrick Smith is a highly regarded law enforcement officer that did not have a blemish on his record until the illegal and retaliatory actions of Krasner who FORCED the conspirators to author fabricated illegal documents.

137.     Once Inspector Smith informed Wilson of Tripp and Cummings racist, illegal, and retaliatory actions against Jacobs he became an instant target of Krasner.

### Police Officer Richard Nicoletti (SWAT)

138.      Philadelphia Police Officer Richard Nicoletti was deployed to Interstate Highway 676 ("I-676") during the "George Floyd" riots.

139.     The riots were coordinated criminal actions by multiple corrupt organizations (RICO).

140.     During the riots a Pennsylvania State Trooper was forced to flee his patrol vehicle as a result of the rioters attacking him.

141.     The Trooper's patrol vehicle was subsequently vandalized, set on fire, and destroyed.

142.     The Mayor, The Police Commissioner, and other high ranking City of Philadelphia officials tasked SWAT (Special Weapons and Tactics) Officer Richard Nicoletti with clearing the coordinated rioters from I-676.

143.     The coordinated rioters were provided "special gear" and weapons by their "organization" in anticipation of the response by law enforcement.

144.     Officer Nicoletti tactically approached the rioters and applied ONLY the necessary force needed to complete his LEGAL orders.

145.     Approximately one month later former Mayor James Kenney, former Police Commissioner Danielle Outlaw, and District Attorney Lawrence Krasner forced Wilson to lie to millions of citizens during a nationally televised press conference under the threat of arrest by Krasner and departmental discipline, which would have led to his termination and loss of pension and benefits.

18

146.     Wilson succumbed to the pressure and lied. The lie led to the arrest and termination of SWAT Officer Nicoletti for not committing any crime and following legal orders and performing his duties.

147.     As a result, the rioters pilfered almost ten million dollars from the citizens of Philadelphia.

148.     During a deposition, Wilson would admit he lied and Richard Nicoletti did not commit any crime or violate departmental policy.

149.     Wilson would also admit that Krasner's co-conspirators at IAD, falsely concluded that Nicoletti violated departmental policy that led to his arrest. Outlaw feigned outrage at Nicoletti's and the PPD actions knowing she approved those very actions.

150.     Wilson would also confirm this by indicating Krasner illegally arrested Nicoletti and the PPD illegally terminated his employment.

151.     Finally, Nicoletti was arrested in retaliation for his father (same name) being involved in an OIS with Krasner's former client Jeffrey Dennis who was killed during the incident.

**Inspector Joseph Bologna**

152.     Inspector Joseph Bologna ("Bologna") was the victim of an assault and robbery during the "George Floyd" riots.

153.     Krasner disregarded Bologna's duties as a law enforcement officer due to their long adversarial history.

154.     Krasner's DAO arrested Bologna who has since been vindicated.

155.     Krasner showed his extreme anger at Bologna's vindication and his inability to continue his persecution of law enforcement. Admitting he was "hoping for a different verdict" during a press conference Krasner slandered Bologna by stating the following: "Those of you who remember a little history will remember looking at the cover of the Daily News and you saw BOLOGNA and you saw him on the cover of the Daily News with a knife and he was cutting wires to a CCTV system while he and a bunch of other narcotics

Officers did some things in that space that were very questionable. This is not the first time that we have heard about BOLOGNA."

156.     This is just another instance of Krasner using the bully pulpit to slander law enforcement. I challenge Krasner (during discovery) to produce that "Daily News cover" he reference while, once again, negligently presenting "his facts" that come out of the ether of his twisted mind.

157.     Former Philadelphia Police Commissioner Christine Coulter testified to the corruption at the District Attorney's Office during a deposition. Coulter said Bologna was illegally arrested and actually the victim of a robbery.

158.     Outlaw, without warning, demoted Coulter after she provided that testimony.

159.     Those are just a handful of illegal arrests and disciplines against law enforcement officers.

160.     These arrests are discriminatory and retaliatory.

161.     These are not the only Officers illegally arrested by Krasner's DAO. I can name Daniel Leavitt, Wayne Arnold, James Saxton and more.

**Captain Nicholas DeBlasis**

162.     Speaking of James Saxton, while a member of Internal Affairs Lieutenant Nicholas DeBlasis conducted an internal investigation of Police Officer James Saxton ("Saxton").

163.     Saxton was cleared during the investigation and Tracy Tripp of the DAO SIU informed Lieutenant DeBlasis there would not be any further criminal investigation into the matter.

164.     Lieutenant DeBlasis was promoted to Captain DeBlasis ("DeBlasis") and assigned to Command the 8th Police District.

165.     After DeBlasis was promoted to Captain Tripp and the DAO SIU arrested Saxton.

20

166.   The new investigator refused to be a part of the DAO SIU criminal activity and retired.

167.   As a result Captain DeBlasis was issued a court notice by the prosecution (Vincent Corrigan) and the defense.

168.   DeBlasis followed departmental policy and testified.

169.   An irate Krasner contacted Deputy Police Commissioner Robin Wimberly and wanted DeBlasis disciplined immediately.

170.   The PPD, once again, honored Krasner's retaliatory wishes and immediately disciplined DeBlasis. *Note: See DeBlasis v. City of Philadelphia, et al. 23-cv-2659.*

171.   This is a pattern and practice of retaliation, discrimination, and criminal conspiracy in the furtherance of illegal conduct that violate the United States Constitution.

## IV.   **DISCUSSION**

172.   The defendants held Mafia style "hand over mouth" meetings and conversations in person regarding the retaliation against Jacobs. These conversations indicated criminal activity was afoot.

173.   Hendershot testified he informed Jacobs' superiors and other parties, including Diana Cortes and City Solicitors, of the criminal activity. The defendants' nefarious intentions and acts are obvious as none of these interactions have been memorialized. None of the interactions have been provided in numerous discovery requests in other civil litigation.

174.   An example is Wilson ordering Hendershot to keep Krasner up to speed through Kia Ghee, regarding Jacobs.

175.   Another example is Hendershot authoring numerous memorandums to Vanore regarding Jacobs, but Vanore never issued a memorialized response.

176.   During a conference with the Honorable Harvey Bartle on October 4, 2023, Jacobs presented the illegal surveillance and criminal investigation against Jacobs and the other actions listed above.

177.    The Court deemed the actions irrelevant to the current actions.

178.    The defendants' counsel during a deposition stated "file another lawsuit."

179.    As a pro se litigant Jacobs views the intentionally inflicted financial hardships that accompany filing additional complaints and appeals another form of retaliation.

180.    When Jacobs informed Judge Bartle that his decision were restricting Jacobs of adequately presenting his claims. Judge Bartle stated "rightly or wrongly" the decisions have been made and you can proceed on the limited remaining claims.

## V.    ARGUMENT

### COUNT ONE

### FIRST AMENDMENT MALICIOUS PROSECUTION

### 42 U.S.C. § 1983

181.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

182.    The defendants conceded and admitted they secretly initiated a criminal investigation against Jacobs as a result of Philadelphia Weekly article on April 21, 2021.

183.    The defendants conceded and admitted the investigation was started on the same date as the article April 21, 2021.

184.    The defendants conceded and admitted the investigation was initiated as a result of Jacobs reporting corruption by officials at the Philadelphia District Attorney's Office and The Philadelphia Police Department.

185.    The defendants conceded and admitted knowledge of Jacobs' First Amendment retaliation claims prior to initiating the criminal investigation/proceeding.

186.    The defendants initiated a criminal investigation/proceeding.

22

187.     The defendants acted maliciously or for a purpose other than bringing Jacobs to justice.

188.     The criminal investigation/proceeding was initiated without probable cause.

189.      The criminal proceeding ended in the plaintiff's favor.

190.     Jacobs' reporting of corruption is a matter of public concern.

191.     The initiation of an illegal criminal investigation against Jacobs to secretly and illegally seized his electronic communications is a violation of his rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution and made actionable against the above defendants pursuant to 42 U.S.C. § 1983.

192.     Jacobs has suffered and continues to suffer emotional, physical, and reputational harm as a result of the Defendants' unconstitutional conduct that entitle him to damages.

193.     Defendants acted under color of state law in retaliating against the Jacobs.

194.     Philadelphia Police Commissioner Danielle Outlaw, District Attorney Lawrence Krasner, and City Solicitor Diana Cortes are "policy makers" for the purpose of attaching municipal liability.

195.     Philadelphia Police Commissioner Danielle Outlaw, District Attorney Lawrence Krasner, and City Solicitor Diana Cortes, at all times, participated, approved, and/or acquiesced in the retaliation against Jacobs thereby attaches liability to Defendant City of Philadelphia for their retaliation against Jacobs in violation of his First, Fourth, and Fourteenth Amendments.

196.     Jacobs is entitled to punitive damages as the defendants acted intentionally, recklessly, maliciously, and in deliberate indifference totally disregarding Jacobs federally protected rights.

## COUNT TWO

## FIRST AMENDMENT RETALIATION

## 42 U.S.C. § 1983

197.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

198.    The defendants have conceded and admitted the retaliatory criminal investigation against the plaintiff for exposing corruption by public officials which is a matter of public concern.

199.    The defendants have conceded the retaliation against Jacobs was the result of a Philadelphia Weekly article reporting on Jacobs "Whistleblower" lawsuit and reports of corruption (19-cv-4616).

## COUNT THREE

## FOURTH AMENDMENT MALICIOUS PROSECUTION

## 42 U.S.C. § 1983

200.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

201.    The defendants initiated a criminal proceeding.

202.    The criminal proceeding ended in the plaintiff's favor.

203.    The criminal proceeding was initiated without probable cause.

204.    The defendants acted maliciously, or for a purpose other than bringing the plaintiff to justice.

205.    The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

## COUNT FOUR

## CONSPIRACY AGAINST RIGHTS

### 18 U.S.C. § 241

206.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

207.    If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured him by the Constitution or laws of the United States, or because of his having so exercised the same.

## COUNT FIVE

## DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW

### 18 U.S.C. § 242

208.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

209.    Whoever, color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution of the United States.

## COUNT SIX

## CONSPIRACY

### 28 U.S.C. § 1983

210.    The plaintiff incorporates all preceding paragraphs as if fully set herein.

211.    The defendants acted in concert to deprive Jacobs of rights and privileges secured or protected by the United States Constitution.

## CONCLUSION

212.     Philadelphia District Attorney Lawrence Krasner entered the Office of the District Attorney with the premeditated intentions of creating a "criminal cabal" to pilfer millions of dollars from the taxpaying citizens of Philadelphia.

213.     Krasner tasked two special units that reported exclusively and directly to him to accomplish these criminal actions.

214.     The units were headed previously headed by Patricia Cummings and Tracy Tripp.

215.     The units are now headed by Michael Garmisa and Lyandra Retacco.

216.     Krasner tasked the District Attorney's Office Special Investigations Unit ("DAO SIU") to falsely and illegally target sworn law enforcement officers.

217.     Krasner tasked the District Attorney's Office Conviction Integrity Unit ("DAO CIU") to create falsified evidence to release/unleash convicted murderers back onto law abiding citizens.

218.     These actions were to divide the public from law enforcement officers and financial gain.

219.     There were two Detectives that possessed knowledge to curtail and deter Krasner's plans. Jacobs was one of those Detectives.

220.     This action was clear when DAO CIU Chief Mike Garmisa nolle pros and released a convicted murderer.

221.     Garmisa considered the following a "suggestive" statement from an eyewitness who observed the convicted murderer shoot and kill his brother. Q. Did you identify the person that shot and killed your brother? A. Yes. Garmisa considered that question "suggestive." Garmisa relied on the "science" and disregarded the statements and previous testimony of the brother witnessing the killing of his brother. A day later DAO CIU released the murderer and paid him millions.

222.     The City Solicitor's Office with knowledge of this egregious actions paid the convicted murderer over two million dollars.

26

223.   This is the "process" Krasner's DAO CIU has used to release ten of murderers for tens of millions of dollars.

224.   Diana Cortes with knowledge continued to payout millions of dollars.

225.   This was done after hiring an outside risk management/investigative firm that confirmed Jacobs' claims.

226.   This report was commissioned by Cortes' City Solicitor's Office.

227.   Cortes' hid the report from the public for two years.

228.   All the while they held private meetings to retaliate and chill Jacobs' speech from exposing this corruption and criminality.

229.   Krasner's illegal activity is quite simple unless investigated. Since Krasner is the District Attorney no investigation occurs.

230.   The faux prosecutor pretends to find "new evidence" or "police misconduct."

231.   The faux prosecutor then contacts a defense attorney to represent the convict.

232.   The faux prosecutor then presents the alleged new evidence and/or police misconduct to the Court, requesting the need for a new trial.

233.   The "defense" does not object to the "new trial."

234.   After the new trial is granted, the convict is "exonerated" by Krasner, who never proceeds with the new trial.

235.   The convict is then sent to the City Solicitor for payment of millions.

Date: 7/12/2024

Detrick Jacobs, Pro Se Plaintiff

27